WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. WEST VIRGINIA PULP & PAPER CO.

No. 374.

District Court, E. D. South Carolina. Charleston Division.

June 5, 1942.

John J. Babe, Principal Atty., of Washington, D. C., George A. Downing and A. B. Steed, both of Atlanta, Ga., and Dakyns B. Stover, of Greenville, S. C., for plaintiffs.

C. W. Waring, of Charleston, S. C., and Christie Benet, of Columbia, S. C., for defendant.

TIMMERMAN, District Judge.

This action was commenced by Philip B. Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, as plaintiff, v. West Virginia Pulp and Paper Company, as defendant, on or about August 28, 1940.

The defendant noticed a motion to require the plaintiff to make his complaint more definite and certain, or to furnish a bill of particulars, pursuant to Rule 12(e) of Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c. By agreement this motion was not heard and, on or about February 28, 1942, the plaintiff filed an amended complaint herein. On March 14, 1942, an order was entered, based upon a written stipulation agreeing thereto, substituting L. Metcalf Walling, Administrator of the Wage and Hour Division of the United States Department of Labor, as plaintiff.

This cause is now before me on a motion "for an order to make more definite and certain, or to furnish a bill of particulars to,

the amended complaint." The amended complaint, omitting formal and jurisdictional allegations, alleges in effect that the defendant is now and, at the times mentioned in the complaint, was engaged "in the production and procurement of pulpwood and in the production therefrom of wood pulp, kraft paper, kraft liner board, and allied products", at the defendant's plant located in Charleston County, South Carolina; that the defendant has caused "the production and delivery of the said pulpwood, from which it manufactured wood pulp, kraft paper, kraft liner board and allied products, at its Charleston Mill, as aforesaid, and defendant procures, and at the times hereinafter mentioned procured the said pulpwood, from the producers thereof"; and that "said goods manufactured and produced from pulpwood by the defendant * * * have been and are being produced for interstate commerce and have been and are being transported, offered for transportation, shipped, delivered and sold in interstate commerce from defendant's Charleston mill to, into, and through states other than the State of South Carolina."

Then follows allegations to the effect that the defendant, since the effective date of the Fair Labor Standards Act of 1938, c. 676, secs. 1 to 19, 52 Stat. pp. 1060 to 1069, 29 U.S.C.A. §§ 201 to 219 (which will be referred to hereafter as the Act), has continuously caused the production of and has procured pulpwood, the principal ingredient used in processing and producing the above-stated products for interstate commerce, from producers thereof who have paid many of their employees engaged in such production at rates less than the minimum prescribed by Section 6 of the Act, and have worked many of their employees longer hours per week than is permissible under the Act without paying them overtime compensation therefor in violation of Section 7 of the Act; that the defendant during said period, "has continuously and repeatedly sold, shipped, delivered, transported and offered for transportation in interstate commerce * * * goods manufactured from pulpwood in the production of which many employees were employed in violation of Sections 6 and 7 of the Act;" and that such conduct on the part of the defendant constitutes and is constituting a violation of Section 15 of the Act. The plaintiff then prays for an injunction to restrain a repetition of the violations complained of.

The particulars in which the defendant asks a more definite statement or for a bill of particulars are, in substance, as follows:

As to paragraphs III and IV of the complaint:

(a) By a statement of the manner in which the defendant is alleged to have been "engaged in the production of" or to have "caused the production and delivery of pulpwood", whether by its employees or agents, or otherwise.

(b) By a statement of the acts by which the defendant "caused the production and delivery" of pulpwood.

(c) By a statement of the manner, other than by purchase, in which the defendant is alleged to have "procured" pulpwood.

As to paragraphs V and VI of the complaint:

(a) By stating what is meant by the use of the terms "production" and "processes and occupations necessary to the production" of pulpwood.

As to paragraph V of the complaint:

(a) By stating the names and addresses of the "producers of the pulpwood used by the defendant", and the manner in which the defendant is alleged to have procured pulpwood from said producers.

(b) By stating the name and address of each employee claimed to have been underpaid, the name of his employer, the character of the work done by each, and the weeks it is claimed each named employee was underpaid.

As to paragraph VI of the complaint:

(a) By stating the name and address of each of the "producers of the pulpwood used by the defendant", and the manner in which it is claimed defendant procured the pulpwood from each.

(b) By stating the name and address of each employee claimed to have been underpaid or worked for longer hours than permitted by the Act and by designating the weeks in which the underpayment or overwork occurred, together with the name of the employer of such employee, the work in which each employee was engaged, the weeks in which underpayments occurred, and the number of hours involved in each instance.

As to paragraph VII of the complaint:

(a) By stating "each sale, shipment, delivery, transportation, or offer for transportation of goods alleged to have been manufactured from pulpwood in the production of which the employees were employed in violation of the Act", "the name and address of the consignee" of each, "the date of the sale, shipment, delivery, transportation, or offer for transportation" of each such, together with an averment as to what violation of either Section 6 or Section 7 of the Act is involved in each such sale, shipment, delivery, transportation, or offer for transportation.

It is the contention of the defendant that the complaint is so general and all-inclusive in scope and covers such a long range in point of time that it is quite impossible for it "properly to prepare his (its) responsive pleading or to prepare for trial", unless a more definite statement or a bill of particulars is furnished. The plaintiff contests this position.

There is a contrariety of opinion respecting the meaning and application of Rule 12(e). It would avail nothing to attempt to reconcile the many opinions expressed. From my point of view the real difficulty is not so much in understanding the rule, as it is in wisely and justly applying it to an agreed or disputed state of facts.

While there is much meat in the splendid brief submitted by counsel for the plaintiff, if I should follow it to its logical conclusion, I would wind up by practically reading Rule 12(e) out of the book. It was not intended by the framers of the Rules of Civil Procedure that any two of the rules should stand in an attitude of constant antagonism.

It cannot be overlooked that a primary function of a bill of particulars is to furnish relevant details in amplification of a pleading, to avoid surprise, narrow the controversy and expedite the trial. Details obtained by a bill of particulars quite often would be deemed prolixity if incorporated in an original pleading. 49 C.J. pp. 622, 623. Framers of the Rules evidently recognized this fact and foresaw a necessity for a resort to a bill of particulars to enable a party to properly prepare for trial when Rule 12(e) was adopted. It is not conceivable that the framers of the Rules intended that Rule 8 should destroy the effectiveness of Rule 12(e), or that Rule 8 should be used by one party to an action to hide from his adversary and the court the real issue or issues ultimately to be tried.

The courts are not unanimous in appreciation of the distinction between a bill of particulars and a more definite statement of the allegations of a pleading. Yet it is reasonably accurate to say, as a generality, that the former is to enable a litigant to obtain from his adversary pertinent details of such adversary's claim or defense as will protect him against surprise and give notice of the real issues tendered, while the latter is to require a pleader to state with definiteness what he first stated vaguely, even if simply and concisely. One is to enable the pleader to prepare for trial, and the other is to inform him definitely what the claim asserted against him is so that he may properly prepare his responsive pleading.

It is significant that the framers of the Rules of Civil Procedure, in Rule 12(e) thereof, reserve both of the mentioned rights for the declared purpose of enabling a litigant "properly to prepare his responsive pleading or to prepare for trial." It is not the province of a trial court to modify, revise, or disregard the plain terms of a rule made for its guidance. Rules 8 and 12 are not necessarily antagonistic. They can be reconciled. They can be construed and applied so that one will not checkmate the other.

Plaintiff's first contention, that no affidavit was offered in support of the motion, is answered by the fact that it is so supported. One W. D. Comings, the General Manager of the Woodlands Department of the defendant, filed an affidavit in support of the motion stating, among other things, that substantially all of the pulpwood used by the defendant was purchased from contractors and producers at so much per cord or other unit of measurement, and that the defendant had no control or authority over the contractors and producers, or over any of their employees. The affidavit goes on to say that some of the producers of pulpwood paid their employees on "a piece rate basis", and that the defendant does not know the number of hours per week worked by the employees of the contractors and producers, or the wages paid therefor, and it has no way of compelling the contractors or producers to supply such information, pointing out that at least four variables "enter the equation, namely, the number of hours

worked, the piece rate basis, the amount of pulpwood purchased and the amount of compensation paid to the employees."

Further, it is pointed out that the defendant, during the period in question, purchased pulpwood from more than forty contractors and producers, and that not less than six hundred, and probably twice that number, employees were worked by producers in the production of pulpwood consumed by the defendant in its business, during many of the weeks in question, and that many of such employees were transients.

This affidavit also states that during the period in question, approximately 180 weeks, a minimum average of six hundred employees were engaged in the production of pulpwood each week, and that it might be necessary for the defendant to examine more than a hundred thousand details of employment to be in a position to meet every possible charge comprehended within the general terms of the complaint, and that none of the items to be examined would concern transactions in which the defendant's employees were directly engaged, but would relate solely to transactions between the defendant's vendors and their respective employees.

It is further pointed out in the affidavit that a full investigation might require even a broader scope of inquiry and investigation, since some of its vendors buy pulpwood from sub-producers. There are other details enumerated in the affidavit, but what has been related will sufficiently identify its import.

Both in their brief and in oral argument counsel for plaintiff contended that Rule 12(e), under which this motion falls, should be sparingly used, if at all, but that recourse should be had to Rules 26 et sequa to get what a bill of particulars or a more definite statement would disclose. Observations from eminent authority, critical of the rule, were cited. Assuming their force, they should be presented to those having authority to alter, change, modify or repeal the rule. Such power is not given to this court. It only has the duty of enforcing and applying the rules. Certainly the opinions cited afford no basis for disregard of the rule, any more than well-reasoned criticisms of the Fair Labor Standards Act would warrant its non-enforcement. The wisdom of the rule is not in question.

■ I judge the rule to mean what it says; no more, no less. It is not ambiguous, and its terms have well-recognized meaning. It says that a party called upon to respond to a pleading "may move for a more definite statement or for a bill of particulars *of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial.*" (Emphasis added). With all due reference to those holding a contrary view, the rule does not say that it shall be ineffectual if the averments to be responded to are "simple, concise, and direct" (Rule 8(e), or if the responsive pleader could avail himself of Rule 8(b) and plead lack of knowledge or information, or if he could resort to one or more of the permissible proceedings provided for in Division V of the Rules.

The fact that Rule 12(e) follows Rule 8 logically warrants the inference that the framers of the rules recognized,—and rightly so, it would seem—that on occasions a pleader would state his claim so simply and concisely as to leave his adversary and the court in much doubt or total ignorance of the factual and, may be, legal issues that would be up for decision.

Furthermore, there are strong reasons for enforcing Rule 12(e) in a case of this character. A criminal contempt proceeding and, perhaps, a criminal indictment lurk in the background. Unlike many of the cases cited by the able counsel for the plaintiff, the defendant in the instant case, if the plaintiff prevails, is to be made to suffer for the overt acts of others, of which it may have had no actual knowledge or concerning which it may have been misled or deceived.

■ The fact that the complaint meets the minimum requirements of Rule 8 may save it from a motion to dismiss for "failure to state a claim upon which relief can be granted", but it will not necessarily hold the complaint invulnerable to an attempt to have the allegations thereof made more definite or to have them amplified by a bill of particulars. Rule 8 was not intended as a negation of Rule 12(e) any more than Division V of the Rules, dealing with depositions and discovery, was so intended. Quite obviously information obtained by invoking Rule 12(e) can, and often will, do away with the necessity of resort to Division V, or any part thereof.

■ The contention that matters of evidence may not be procured by a bill of particulars, as an abstract proposition, is entirely correct, but I do not apprehend that to be the purpose of the pending motion. It is one thing to charge A with purchasing pulp-

wood from B which had been produced for him by the labor of C when B had not paid his laborers in accordance with the Act, but it is another thing to produce evidence establishing those alleged facts.

■ There is respectable authority for the general proposition that facts within the knowledge of the moving party may not be required by a bill of particulars, but there ire exceptions to this doctrine. A complaint might be drawn with such generality of expression as to comprehend a dozen or a hundred transactions, all within the knowledge of the defendant, but that would not deprive the defendant of the right to know which one or more of the possible transactions the plaintiff bona fide referred to and intended to rely upon. It is hardly reasonable to believe that the rules were intended to put a responsive pleader to a distinct disadvantage, to force him to plead in ignorance of what was intended by his adversary, and then resort to the cumbersome methods of discovery, depositions or interrogatories to ascertain what factual and legal issues he would be called upon to meet on the trial of the case.

The relief asked in this case is not predicated upon the acts of the defendant, or its servants and agents, but upon the conduct of other parties over whom the defendant had neither power nor control, and concerning whose conduct it is averred to be without knowledge. Why then should not the plaintiff frankly tell the defendant what he, intends to rely on in this case, and have an end to preliminary motions and other measures of delay?

The plaintiff earnestly urges that the defendant "fully understands the nature of the cause of action alleged against it." So would one held for crime, if he were told that he was charged with murder, but how would such a defendant know how to plead or prepare for trial under such an accusation. Certainly he would be entitled to know whom he was charged with murdering and by what means. In this case the defendant, of course, knows that he is charged with processing and putting into interstate commerce goods which were manufactured in part from pulpwood, purchased from some one or more of many producers who may have failed to pay some one or more of some thousand or more of their employees in accordance with the Fair Labor Standards Act; but isn't that all it can know from the complaint?

In his printed brief the plaintiff takes this position: "Simply stated, the amended complaint alleges that the defendant has bought, received, handled and used in its production activities, goods produced in violation of the Act, and that the defendant is unlawfully availing itself of interstate commerce to dispose of goods, the principal ingredient of which has been produced in violation of the Act. * * * Where it has no knowledge sufficient to form a belief as to any of such allegations, defendant can so state and such averment is construed a denial in terms. * * *"

This statement appears to be an admission that the allegations of the complaint deal only in generalities and legal conclusions and give the defendant no reasonably accurate information concerning the real issues it will be called upon to meet on the trial of the cause. True, the defendant can answer by saying that it has no knowledge or sufficient information to form a belief as to the truth of the allegations made, but what of it? Is it not entitled to know what it is to meet in court before trial time arrives? Is it not entitled to frame its answer in contemplation of the issues the plaintiff intends tendering? And what is the objection to informing the defendant just what the controversy is about? Why deny the potency of Rule 12(e); and force the defendant to resort to more cumbersome and less expeditious methods to ascertain what he is to be called upon to answer for?

In the plaintiff's brief, it is said: "The plaintiff is presently unable to detail the exact hourly wage received by each of the many employees, and is unaware of the identity of many who worked during the period in question"; also, "It is further necessary to point out that only one employee engaged in the production of a unit of the particular goods in question, if paid in violation of sections 6 or 7, will spell out the allegation that such unit, without identifying others who worked on it, was produced in violation of the Act."

I do not understand that the motion for a bill of particulars, or for a more definite statement of the allegations of the complaint, contemplates requiring the plaintiff to furnish the defendant with a detailed statement of the names and addresses of all producers and the names and addresses of all of the employees of each of said producers together with the number of hours worked by each and the wages paid them for each

422

work week in question, unless the plaintiff bona fide expects to offer proof that each and every laborer of each and every such producer, during each and every work week within the ·period in question, were either underpaid or overworked in violation of the Act. I understand that the intent of the motion is to ask the plaintiff to specify only the items upon which he will depend to establish his right to the relief asked herein. Surely the plaintiff did not bring this action without knowing what he intended to prove, or could prove, to sustain the allegations of the complaint. It may be that many of the producers can be eliminated entirely. It is conceivable that the activities of only one producer will be brought into question. It is sufficient if enough is alleged. to show a substantial violation of the Act. So much is considered in the last quotation from plaintiff's brief.

The fact that the defendant knows the names of the producers from whom it purchased pulpwood does not disclose the point of plaintiff's attack. Why should the defendant be required to bring witnesses to defend itself against all the activities of all the producers with whom it has done business, if the plaintiff bona fide has no intention of bringing in question the activities of more than two or three of them, perhaps only one of them?

Another thing to be borne in mind is that the plaintiff has the power, under sec. 11 of the Act, to inspect and take copies of payrolls and other records of the producers of pulpwood from whom the defendant has purchased pulpwood, to interrogate the employees of such producers and to make other necessary investigations to detect violations of the Act, while the defendant has no such power.

If the affidavit submitted in behalf of the mover is true, and no affidavit or other proof has been offered in contradiction thereof, then the defendant is entitled to additional information from the plaintiff to enable it to prepare its responsive pleading and to prepare for trial.

Without going into every detail of the motion, I deem it sufficient to say that the plaintiff should, by means of a bill of particulars or by further amendment of the complaint, furnish the following specific information:

1. Whether the plaintiff intends to rely upon alleged violations of the Act respecting the wages, hours and rates of pay of employees directly employed, paid and controlled by the defendant (hereinafter referred to as direct employees), or upon such alleged violations respecting the independent employees of the contractors and producers from whom defendant purchased pulpwood (hereinafter referred to as independent employees), or upon both.

2. If any allegations of violation of the Act concern direct employees, then the names of such employees and the dated weeks in which the respective violations are claimed to have occurred.

3. If any allegations of violation of the Act concern independent employees, then the names of the contractors or producers by whom the independent employees were employed, together with the names of such independent employees and the dated weeks in which the respective violations are claimed to have occurred.

An order may be submitted to put the foregoing conclusions into effect.